### IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
### WESTERN DIVISION

ROBERT WHITEHOUSE and                                                                    PLAINTIFFS
GINA WHITEHOUSE

v.                                            No. 4:06CV00923 JLH

IC CORPORATION and INTERNATIONAL
TRUCK AND ENGINE COMPANY                                                       DEFENDANTS


### OPINION

Robert and Gina Whitehouse commenced this action in the Circuit Court of Faulkner County,

Arkansas, against Robert Whitehouse's former employer, IC Corporation, and its parent company,

International Truck and Engine Corporation, alleging fraud and breach of contract. The Whitehouses

allege that the defendants made several promises to Robert Whitehouse to induce him to stay with

IC Corporation and to reject a job offer to become the CEO of Federal Coach. They allege that the

defendants have not kept any of their promises. The defendants removed the suit. The Whitehouses

now move to remand this action back to the circuit court. For the following reasons, that motion is

granted.

### I.

According to the amended complaint, Robert Whitehouse was the president and CEO of IC

Corporation, a wholly-owned subsidiary of International Truck. While Whitehouse was working for

IC Corporation, Federal Coach approached him about becoming its president and CEO. Whitehouse

received a formal offer from Federal Coach a few months thereafter. Whitehouse turned down the

offer because of promises made by several International Truck officers, including Tom Cellitti, who

was the vice president of International Truck's bus group division and Whitehouse's supervisor, that

Whitehouse would become an International Truck employee and receive improved benefits.  The

benefits that Whitehouse was allegedly promised included:

- Being considered an International Truck employee as of his IC Corporation

    hire date;

- Continued health care for both of the Whitehouses until death; and

- Continued life insurance at five times Whitehouse's salary.

The complaint also states that Whitehouse was "shown a package of scenarios [that calculated]

Whitehouse's pension benefits based on retirement at age 55, various wage increases and a start date

of January 1, 1996."

Whitehouse alleges that the promises were not fulfilled.  The complaint states that

"Whitehouse was informed that his benefits under the Managerial Retirement Objective would be

determined based on his Final Average Compensation from January 1, 2004, rather than the

promised January 1, 1996[,] date."  The  "Managerial Retirement Objective," according to a letter

from International Truck to Scott Lancaster, Whitehouse's attorney, is an International Truck ERISA

plan.  The letter states:

> This letter responds to your letter . . . in which you . . . requested various benefit plan
> information pursuant to Section 104 of the Employee Retirement Income Security
> Act of 1974, as amended ("ERISA").
>                                   * * *
> [A] copy of all plan documents . . . pertaining to the International Truck and Engine
> Corporation Retirement Savings Plan (the "RSP") and the International Truck and
> Engine Corporation Managerial Retirement Objective Plan (the "MRO Plan") was
> previously provided to you.  Although not referenced in your letter, a copy of the
> Requested Plan Documentation pertaining to the IC Corporation 401(k) Plan (the "IC
> 401(k) Plan") and the Retirement Plan for Employees of IC Corporation (the "IC
> Pension Plan") was also previously provided for you.
>
> Please not that the above-referenced employee benefit plans represent an exhaustive

list of retirement plans in which Mr. Whitehouse was a "participant," as defined in Section 3(7) of ERISA.

Whitehouse also alleges that the defendants terminated him April 21, 2005, and required him to exercise any vested stock options within 90 days, both in violation of the alleged promises the defendants made to Whitehouse.

## II.

Under the removal statute, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant" to federal court. 28 U.S.C. § 1441(a). District courts have original jurisdiction in cases "arising under the Constitution, laws, or treaties of the United States." *Id.* § 1331. Ordinarily, whether a particular case arises under federal law turns on the well-pleaded complaint rule. *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 9-10, 103 S. Ct. 2841, 2846, 77 L. Ed. 2d 420 (1983). According to that rule, whether an action arises under federal law is to be determined solely from the plaintiff's complaint; the existence of a federal defense ordinarily does not create jurisdiction under § 1331. *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 29 S. Ct. 42, 53 L. Ed. 126 (1908). However, original jurisdiction may also exist under § 1331 "when a federal statute wholly displaces the state-law cause of action through complete preemption." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8, 123 S. Ct. 2058, 2063, 156 L. Ed. 2d 1 (2003).

The defendants argue that the Court has original jurisdiction under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, et seq., and specifically that the claims made by the Whitehouses are completely preempted pursuant to ERISA § 502(a), codified at 29 U.S.C. § 1132(a). Complete preemption differs from express preemption, which is governed by ERISA § 514(a),

codified at 29 U.S.C. § 1144(a).  Section 514(a) states that ERISA preempts any state law that "relate[s] to any employee benefit plan." 29 U.S.C. § 1144(a).  "Although express preemption does not allow for automatic removal to federal court, it does provide an affirmative defense against claims not completely preempted under ERISA § 502." *Prudential Ins. Co. of Am. v. Nat'l Park Med. Ctr.*, 413 F.3d 897, 907 (8th Cir. 2005).

ERISA § 502(a) provides, "A civil action may be brought by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).  Any "state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy" is completely preempted. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209, 124 S. Ct. 2488, 2495, 159 L. Ed. 2d 312 (2004).  Further, a state-law cause of action is completely preempted "if an individual, at some point in time, could have brought his claim under [ERISA § 502], and where there is no other independent legal duty that is implicated by a defendant's actions." *Prudential*,  413 F.3d at 914 (quoting *Davila*, 542 U.S. at 210, 124 S. Ct. at 2496).

Here, neither the fraud nor the breach of contract claim "duplicates, supplements, or supplants the ERISA civil enforcement remedy."  Whitehouse does not claim that he is entitled to benefits under any ERISA plan, nor is he attempting to enforce any rights under any ERISA plan. He does not ask the Court to clarify his future benefits under any ERISA plan, nor does he claim that the language of any International Truck ERISA benefits plan was misinterpreted or misapplied as to him. *Cf. Neumann v. AT&T Commc'ns, Inc.*, 376 F.3d 773, 780 (8th Cir. 2004) (finding the "heart of the lawsuit" to be the plaintiff's claim that the defendant violated its ERISA plan by classifying

4

the plaintiff's condition as a "sickness" rather than an "accident").

While the defendants identify the MRO plan as an ERISA plan that must be interpreted for Whitehouse's claims to be decided, it is difficult to see why that is so. Whitehouse makes no claim that the MRO plan has been misinterpreted, or that it should now be modified to contain the January 1, 1996, date for determining Whitehouse's benefits. Rather, the central issue in both of Whitehouse's claims is what the defendants promised him apart from any ERISA plan. No interpretation of any plan will be required to decide whether the defendants made the alleged promises. The only reference that might be made during this case to the MRO plan or any other ERISA plan would be to determine whether the defendants fulfilled their promises. While that might require interpreting the plan in a literal sense, such an interpretation would have no effect on the legal rights of any ERISA entities under the ERISA plan. Moreover, the defendants have attached to their response an exhibit that shows an amendment to the MRO plan to include Whitehouse, but they admit that "this amendment did not include the terms plaintiffs now claim should have been included." Defs. Resp. Br. at 3. Thus, it apparently is undisputed that the plan does not fulfill the promises that Whitehouse alleges were made to him. If, as it appears, it is undisputed that the plan does not fulfill the promises that Whitehouse alleges were made to him, Whitehouse could not bring this action under ERISA. He could not bring this action "to recover benefits due to him under the terms of his plan, to enforce his rights under the plan, or to clarify his rights to future benefits under the plan." ERISA § 502(a)(1)(B).

The essence of Whitehouse's claims is not that he was denied benefits from an ERISA plan but that the defendants induced him to stay at IC Corporation and forego employment with Federal Coach through false promises. *Cf. Hull v. Fallon*, 188 F.3d 939, 943 (8th Cir. 1999) (finding that

medical malpractice action was preempted where "the essence of [the plaintiff's] claim" was that he was improperly denied benefits under an ERISA plan).  Whitehouse alleges that the defendants made several promises to keep him at IC Corporation, including a promise that his compensation would be improved, a promise that he would be viewed as an International Truck employee as of his IC Corporation hire date, a promise that he and his wife would be given continued health care for life, a promise that he would be given continued life insurance benefits at five times his salary, and a promise that he would receive a certain salary and benefits package the equivalent of working to age 55.  The defendants allegedly made their promises to Whitehouse as officials of International Truck and IC Corporation in an attempt to keep Whitehouse at IC Corporation, not as fiduciaries to or as representatives of the plan.  *Cf. Farr v. US West, Inc.*, 58 F.3d 1361,1366 (9th Cir. 1995), *overruled on other grounds by Varity Corp. v. Howe*, 516 U.S. 489, 116 S. Ct. 1065, 134 L. Ed. 2d 130 (1996).  These alleged promises were all made outside the context of any specific ERISA plan for the purpose of keeping Whitehouse at IC Corporation.

That some of the promises made to Whitehouse probably could have been fulfilled through an ERISA plan, such as the MRO plan, is of no consequence.  The promises did not necessarily depend on any ERISA plan, because, according to the complaint, the defendants had an obligation to fulfill those promises, and could have fulfilled those promises, irrespective of any ERISA plan. Again, Whitehouse's claims are not that he was denied benefits under any particular plan or that his rights under any particular plan should be different but that the defendants falsely promised benefits to induce him to stay with IC Corporation.

Whitehouse's claims do not relate to the reporting, disclosure, funding, or vesting requirements of any ERISA plan.  His claims do not challenge a benefits determination under any

ERISA plan.  Nor do his claims allege misconduct growing out of the administration of any ERISA plan.  In short, this case provides a set of facts and two state-law causes of action with relationships "too tenuous, remote, or peripheral" to any ERISA-governed plan for preemption to apply.  *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 100 n.21, 103 S. Ct. 2890, 2901 n. 21, 77 L. Ed. 2d 490 (1983).

## III.

The defendants also argue that this Court has jurisdiction pursuant to 28 U.S.C. § 1332, which provides that the district courts shall have original jurisdiction in all civil actions between citizens of different states when the amount in controversy exceeds $75,000.  It is well settled that § 1332 requires complete diversity of citizenship between the parties.  On the face of the amended complaint, complete jurisdiction is lacking because IC Corporation is an Arkansas corporation and the Whitehouses are citizens of Arkansas, but the defendants argue that IC Corporation was fraudulently joined to defeat diversity jurisdiction.  Joinder is fraudulent if there exists "no reasonable basis in fact and law" supporting the plaintiff's claims against the resident defendant.  *Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 871 (8th Cir. 2002).  The defendants argue that the Whitehouses have failed to allege in their amended complaint that any employee or representative of IC Corporation made any representations or promises to the Whitehouses.  They contend that all of the representations recited in the amended complaint were allegedly made by employees of International Truck, not employees of IC Corporation.  Based on these arguments, they have moved to dismiss IC Corporation.

Under Arkansas law, a plaintiff must show mutual promises in order to prove consideration, an essential element of a contract.  *See Williamson v. Sanofi Winthrop Pharm., Inc.*, 347 Ark. 89, 98, 60 S.W.3d 428, 433 (2001) (listing the essential elements of a contract); *Berry v. Cherokee Vill.*

*Sewer, Inc.*, 85 Ark. App. 357, 361, 155 S.W.3d 35, 38 (2004).  Similarly, a claim of fraud requires

a false representation of material fact by the defendant.  *Golden Tee, Inc. v. Venture Golf Sch., Inc.*,

333 Ark. 253, 266, 969 S.W.2d 625, 632 (1998).  Because no IC Corporation employee promised

or represented anything to the Whitehouses, the defendants argue that the Whitehouses cannot make

out claims either for breach of contract or for fraud against that entity.

The Whitehouses have sufficiently pled that the promises and representation allegedly made

to them by International Truck employees were also on IC Corporation's behalf.   A "corporation

is bound in the same manner as a natural person by duly implied authority of its agents, as well as

by authority expressly given."  2 WILLIAM MEADE FLETCHER, FLETCHER CYCLOPEDIA OF THE LAW

OF PRIVATE CORPORATIONS § 437 (2006).   As was mentioned above, Cellitti is named in the

amended complaint as someone who made promises and representations to Robert Whitehouse

concerning improved benefits if he stayed with IC Corporation.  Although Cellitti was an employee

of International Truck, the amended complaint alleges and the answer admits that Cellitti had

supervisory authority over Whitehouse, who was the CEO of IC Corporation.  The exact nature of

Cellitti's supervisory position over Whitehouse is not clear.  However, that authority must have come

either expressly or impliedly from the directors of IC Corporation.   In the ordinary course, if one

corporation is a wholly-owned subsidiary of another, the parent corporation as the sole shareholder

of the subsidiary would appoint the board of directors of the subsidiary.  The board of directors of

the subsidiary, either expressly or impliedly, could authorize officers of the parent corporation to

supervise the subsidiary on its behalf as presumably happened when Whitehouse became an

employee of International Truck while continuing as president of IC Corporation.  Because it is

admitted that Cellitti had authority to supervise Whitehouse, he must have had express or implied

authority from the board of IC Corporation to act on behalf of that entity.[1]  Thus, because Cellitti had

authority to supervise Whitehouse, he must have had the authority to act on IC Corporation's behalf

when he promised improved benefits to Whitehouse and, as a consequence, to make IC Corporation

liable for not following through on those promises.

In all of this, it should not be forgotten that Whitehouse was an Arkansas resident who was

employed as president of an Arkansas corporation and who performed his duties in Arkansas.  He

now alleges that he was not compensated for his services as president of the Arkansas corporation

as promised.  It would be strange if IC Corporation were not named as a defendant in this case; it

would be even more strange to say that IC Corporation has been fraudulently joined.

Because IC Corporation is not fraudulently joined, complete diversity of citizenship is

lacking, and the Court is without jurisdiction under 28 U.S.C. § 1332.

## CONCLUSION

For the forgoing reasons, the Court lacks subject matter jurisdiction to hear this case.  The

Whitehouses' motion to remand to the Circuit Court of Faulkner County, Arkansas, is GRANTED.

Document #12.

IT IS SO ORDERED this 13th day of October, 2006.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE

---

[1]  The only other explanation for the fact that an employee of International Truck
supervised the president of IC Corporation would be if the parent company disregarded the
corporate form, which no one here argues.